# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-1240


SHENEATHA STEVENS

VERSUS

MARKET BASKET  STORES, INC.


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2012-5086
HONORABLE SHARON D. WILSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## DAVID KENT SAVOIE
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Shannon J. Gremillion, and David Kent Savoie, Judges.


## REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.

**Christopher P. Ieyoub**
**Plauche, Smith & Nieset, LLC**
**1123 Pithon Street**
**P. O. Drawer 1705**
**Lake Charles, LA 70602**
**(337) 436-0522**
**COUNSEL FOR DEFENDANT-APPELLANT:**
     **Market Basket  Stores, Inc.**

**Jason R. Bell**
**Cox, Cox, Filo, Camel & Wilson**
**723 Broad Street**
**Lake Charles, LA 70601**
**(337) 436-6611**
**COUNSEL FOR PLAINTIFF-APPELLEE:**
     **Sheneatha Stevens**

**SAVOIE, Judge.**

This case involves a Plaintiff's slip and fall at a grocery store. After bench trial, the trial judge found the Defendant grocery store 100% liable, and awarded general damages in the amount of $5,000 to the Plaintiff, as well as the Plaintiff's medical expenses. The Defendant appeals, and argues that the Plaintiff's claim was fraudulent and/or that the Plaintiff should be found 100% at fault. The Plaintiff also appeals and argues that the amount of general damages awarded was too low. For the reasons that follow, we reverse the decision of the trial court in part, reallocate fault to 60% to the Plaintiff and 40% to the Defendant, and affirm the amount of general damages awarded.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 15, 2012, Plaintiff Sheneatha Stevens ("Ms. Stevens") fell on rice that was on the floor at a Market Basket grocery store located on 3rd Avenue in Lake Charles, Louisiana. The rice was on the floor at the end of an aisle near a refrigerator/cooler containing cold drinks.

Following the incident, Ms. Stevens was transported by ambulance from Market Basket to Lake Charles Memorial Hospital, complaining of back pain. She received treatment from Lake Charles Memorial Hospital that same day and was released. On February 1, 2012, she began treatment for low back pain with a chiropractor, Dr. Steven Caraway, and continued treatment with him through April 2, 2012.

Ms. Stevens filed suit against Market Basket on December 10, 2012. Market Basket filed an answer on March 21, 2013, denying liability and affirmatively pleading the fault of Ms. Stevens. On April 4, 2014, Market Basket filed a

supplemental and amending answer wherein it affirmatively alleged fraud on the part of Ms. Stevens.

A bench trial was held on May 29, 2014. Evidence at trial consisted of testimony from Ms. Stevens, Market Basket's surveillance video of the incident, deposition testimony of two Market Basket employees, deposition testimony of Ms. Stevens, and Ms. Stevens' medical records.

The trial judge rejected Market Basket's allegations of fraud, and rendered judgment against Market Basket and in favor of Ms. Stevens for:

> [G]eneral damages in the amount of $5,000.00, special damages as follows: Lake Charles Memorial Hospital . . . in the amount of $56.78 (reimburse Medicaid), Acadian Ambulance . . . in the amount of $389.33 (reimburse Medicaid) and Caraway Branch Chiropractic Clinic . . . in the amount of $2,374.00, legal interest from the date of judicial demand, and for all costs of these proceedings.

## ASSIGNMENTS OF ERROR

Market Basket appealed and argues that the trial court erred in (1) failing to find fraud on the part of Ms. Stevens, and (2) allocating 100% of the fault to Market Basket. Ms. Stevens answered the appeal and seeks an increase in the amount of general damages awarded.

## DISCUSSION

**Standard of Review**:

The Louisiana Supreme Court has set forth the following standard for reviewing a trial court's findings of fact:

> A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." [There is] a two-part test for the reversal of a factfinder's determinations:
>
> 1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and

2

2) [T]the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous.

Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.

*Stobart v. State, through Dept. of Transp. and Dev.*, 617 So.2d 880, 882 (La.1993)

(citations omitted).

## Market Basket's Assignment of Error No. 1: Fraud Claim:

Market Basket asserts that the trial court erred in failing to find fraud on the part of Ms. Stevens. It argues a surveillance video of the incident shows Ms. Stevens was fraudulent in that she intentionally fell on the rice on the floor after having initially slipped in the rice (but not falling) several seconds earlier. In support of its claim, Market Basket also relies on Ms. Stevens' trial testimony regarding over twenty personal injury claims filed by or on behalf of Ms. Stevens since 2003. At trial, Ms. Stevens testified she did not remember most of these claims.

The existence of fraud is a question of fact, and the trial judge's findings are therefore subject to the manifest error standard of review. *Edmundson Bros.*

*Partnership v. Montex Drilling, Co.*, 98-1564 (La.App. 3 Cir. 5/5/99), 731 So.2d 1049.

Fraud exists if it can be shown that material misrepresentations have been made by one party designed to deceive another to obtain some unjust advantage or to cause loss or inconvenience to the other. *Id.*; La.Civ.Code art. 1953. Fraud need only be proven by a preponderance of the evidence and may be established by circumstantial evidence. La.Civ.Code art. 1957.

The record reasonably supports the trial judge's finding that Ms. Stevens did not intentionally fall, but rather "legitimately fell", on the rice, and therefore that Ms. Stevens was not fraudulent in asserting her claim. The surveillance video on which Market Basket relies does not conclusively establish whether or not Ms. Stevens' fall was intentional. The trial judge's factual finding as to the existence of fraud, after her consideration of all of the testimony and evidence submitted by the parties, is not manifestly erroneous.

**Market Basket's Assignment of Error No. 2: Allocation of Fault:**

The allocation of fault among the parties is a factual determination which is subject to the manifest error standard of review. *Clement v. Frey*, 95-1119 (La. 1/6/96), 666 So.2d 607. If we find the trial court was manifestly erroneous in its allocation, we should adjust the award, but only to the extent of lowering or raising it to the highest or lowest point respectively that is reasonably within the trial court's discretion. *Id.*

In determining the degree of fault assigned to each party, the court considers the following:

> (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what

was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.

*Watson v. State Farm Fire and Cas. Ins. Co.*, 469 So.2d 967, 974 (La.1985).

Additionally, we have recognized that,

[a]lthough a customer has a duty to exercise reasonable care under the circumstances, the customer's duty to keep a proper lookout is lessened when merchandise on the merchant's shelves and displays attracts his or her attention. . . . To show that the plaintiff was comparatively at fault, the merchant must prove that the plaintiff actually saw or reasonably should have seen the floor hazard prior to the accident.

*Norton v. Wal-Mart Stores, Inc.,* 97-1060 (La.App. 3 Cir. 2/11/98), 707 So.2d 489, 494.

In this case, the trial judge ultimately found Market Basket to be 100% at fault for Ms. Stevens' fall. The oral reasons for ruling make clear that this allocation was based on a finding that a Market Basket employee, who saw the rice on the floor less than a minute before Ms. Stevens entered the store, should have warned Ms. Stevens about the rice as Ms. Stevens walked past the employee and proceeded toward the aisle where the spilled rice was located.

Market Basket argues that the trial judge was manifestly erroneous in failing to allocate fault to Ms. Stevens because the surveillance video establishes that Ms. Stevens had actual knowledge of the rice on the floor prior to falling on it. We agree.

The surveillance video in evidence shows the entire incident in question. At 18:58:43.1 of the video, Ms. Stevens has entered the store and into the view of the camera from the left. She is clearly talking on her cell phone. She proceeds straight

ahead toward a drink cooler at the beginning of an aisle. It is undisputed that the spilled rice is located on the floor by the drink cooler.

At 18:58:50.1 of the video, Ms. Stevens unmistakably loses her balance in the area where the rice is located, just before she is in front of the door to the drink cooler, but she does not fall to the floor. By 18:58:51.4, she is standing completely back up, looking to her left towards the store entrance, and is no longer on her cell phone. Then, at 18:58:53.3, she turns and looks into the cooler. About seven seconds later (18:59:00.4), she opens the door of the cooler and pulls out a drink. At 18:59:05.2, she closes the door of the cooler, turns to her right, and walks down the aisle until she goes out of the camera's view on the right side of the screen at 18:59:07.2.

Three seconds later (18:59:10.4), she reenters into the view of the surveillance camera from the right, and walks back down the same aisle in the direction of the spilled rice, toward the entrance of the store. At 18:59:12.3, she slips and falls in the area where the rice is.

Because the surveillance video conclusively establishes that Ms. Stevens slipped in the rice twenty-two seconds before she slipped in it again and fell, it must be concluded that Ms. Stevens had actual knowledge of the hazard prior to falling.

In addition, there is no indication that Ms. Stevens was shopping or looking at merchandise when she fell. Instead, she testified that after she got the drink out of the cooler, she had forgotten what she had gone into the store to buy, and was going back to her car to ask her children what they wanted.

While a Market Basket employee had seen the spilled rice less than a minute before Ms. Stevens can be seen entering the store and talking on her cell phone,

6

and the employee did not warn Ms. Stevens about it prior to her initial slip, Ms. Stevens did not fall until after she had already slipped once and had actual knowledge of the hazard. Therefore, the trial court was manifestly erroneous in not allocating a portion of fault to Ms. Stevens.

Under the facts of this case, the lowest allocation of fault to Ms. Stevens that would not constitute an abuse of the trial court's discretion would be 60%, with 40% of the fault allocated to Market Basket.

**Ms. Stevens' Assignment of Error: Amount of General Damages:**

Ms. Stevens contends that the trial court's award of $5,000 in general damages was abusively low. We disagree.

The standard of review for a general damages award was set forth by the Louisiana Supreme Court in *Duncan v. Kansas City Southern Railway Co.*, 00–66, pp. 13-14 (La. 10/30/00), 773 So.2d 670, 682-83, *cert. dismissed*, 532 U.S. 992, 121 S.Ct. 1651 (2001) (citations omitted) as follows:

> Vast discretion is accorded the trier of fact in fixing general damage awards. This vast discretion is such that an appellate court should rarely disturb an award of general damages. Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. As we explained in *Youn [v. Mar. Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994)]:
>
> > Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or [reduce] the award.
>
> The initial inquiry, in reviewing an award of general damages, is whether the trier of fact abused its discretion in assessing the amount of damages. Only after a determination that the trier of fact has abused its "much discretion" is a resort to prior awards appropriate

and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion.

In the present case, the trial court stated the following in awarding general damages:

> I did spend a lot of time going through the notebook that was . . . prepared for me by the defendant[.] . . . I don't believe the plaintiff had a lot of pain from this injury. I think she had the bruise that's documented and she probably had some soreness[,] and I think that is subsided by the time that she has that subsequent accident, and that's why there was no tenderness on the exam. I believe that medical report. That being said, I'm awarding the plaintiff $5,000.00 in general damages . . .

Based upon the evidence in this case, we find no abuse of discretion in the trial judge's award of general damages.

## CONCLUSION

For the foregoing reasons, the judgment of trial court is reversed in part, and we render judgment reallocating fault to 60% to Sheneatha Stevens and 40% to Market Basket, such that Market Basket is liable to Ms. Stevens for 40% of the damages, expenses, and costs, awarded by the trial court. The amount of general damages awarded by the trial court is affirmed. Costs of this appeal are assessed to Sheneatha Stevens.

**REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.**